**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

T.H., a minor, by and through next friend   *
and guardian, CHARLES HOSKYN   *
  *
      PLAINTIFF   *
  *
  *    CASE NO.  4:17CV00133 SWW
V.   *
  *
  *
S. KYLE HUNTER, in his individual and   *
official capacity as Prosecuting Attorney   *
for the Eleventh Judicial District, ET AL.   *
  *
     DEFENDANTS   *

**<u>ORDER</u>**

Plaintiff T.H., a minor, commenced this action under 42 U.S.C. § 1983 through

next friend and guardian Charles Hoskyn, naming several defendants including the State

of Arkansas, state prosecuting attorneys S. Kyle Hunter ("Hunter") and Karres Manning

("Manning"), and employees of the Jefferson County Sheriff's Department.  Now before

the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure [ECF Nos. 7, 8] by the State, Hunter, and Manning.  Plaintiff has filed a

response in opposition [ECF Nos. 14, 15] and the movants have filed a reply [ECF No.

16].  Also before the Court is Plaintiff's motion requesting leave to file an amended

complaint [ECF No. 18].  After careful consideration, and for reasons that follow, the

motion to dismiss is granted in part and denied in part and the motion to amend is granted

in part and denied in part, as provided in this order.

1

**I.**

When deciding a motion to dismiss under Rule 12(b)(6), all factual allegations set forth in the complaint are accepted as true, and the complaint is reviewed to determine whether the factual allegations show that the pleader is entitled to relief.   *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007).  If the pleading fails to state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim.  *Id* . at 1974.  Specifically, the complaint must state enough facts to "nudge [the] claims across the line from conceivable to plausible...." *Id*.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id*. at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**II.**

The following factual allegations, which the Court accepts as true for the purpose of review, come from the original complaint and include supplemental allegations set forth in the proposed amended complaint.  On March 10, 2016,[1] a state judge entered a sealed "Order to Deliver," which read as follows:

ORDER TO DELIVER

THE SHERIFF OF JEFFERSON COUNTY, ARKANSAS:

> You are hereby ordered and directed to take custody from the Second Chance Ranch, . . . a juvenile delinquent, T.H. . . . who is now confined in said facility and deliver him to Jefferson County Courthouse . .

---

[1]  March 10, 2016 fell on a Thursday, but the complaint indicates that the day was a Friday.

. on Monday, March 14-15, 2016 at 1:00 p.m. for the purpose of a criminal jury trial.

The Superintendent/Director of the Second Chance Ranch is hereby ordered to have T.H. . . . available for transportation by the Sheriff of Jefferson County on the aforementioned dates.  That Sheriff of Jefferson County . . . is to deliver T.H. . . . to the Jefferson County Courthouse on Monday, March 14-15, 2016 at 1:00 p.m., for the purpose of a criminal jury trial.

The Sheriff of Jefferson County . . . is further ordered to return custody of said juvenile delinquent to the Second Chance Ranch upon completion of said jury trial.

The Order to Deliver referred to Plaintiff as a "juvenile delinquent," but he was not a juvenile delinquent at the time and was not confined.  Instead, Plaintiff was in the custody and care of the Arkansas Department of Human Services ("ADHS"), living at Second Chance Youth Ranch, a residential, child care facility.  The Order to Deliver was entered in a criminal case against Samuel A. Evans ("Evans"), Plaintiff's former foster parent, who had been charged with sexually assaulting another child who lived in his home when Plaintiff was present.  Plaintiff was removed from Evans's home, but he was never interviewed regarding the sexual assault charges against Evans.

Defendant Manning presented the Order to Deliver to Jefferson County Sheriff's Sergeant Dorothy Rowland ("Rowland"), and Manning instructed Rowland that Plaintiff should be delivered to the Jefferson County Juvenile Detention Center ("JDC") on Friday, March 11, 2016 and housed at the JDC pending Evans's criminal trial.  Rowland communicated Manning's instructions to JDC officer R.C. Toney ("Toney").

On March 11, 2016, Toney located Plaintiff at his school, placed him in handcuffs and ankle irons, and delivered him to the JDC, where he remained for the entire weekend. Ana Ortiz, Plaintiff's ADHS case worker, met with Manning and attempted to gain custody of Plaintiff.  However, Manning told Ortiz that Plaintiff was in the Sheriff's custody and that it was protocol to detain a witness for his own safety.

On Saturday, March 12, 2016, Manning visited Plaintiff in his cell and asked him what he could offer by way of testimony at Evans's trial.  Plaintiff told Manning that he had witnessed nothing.  Plaintiff asked Manning why he had been arrested and detained, and Manning responded, "You have to do stuff you don't want. That's life."

On March 14, 2016, the first day of Evans's trial, Plaintiff was placed in restraints and transported to Manning's office, where he talked to his attorney ad litem. Afterwards, Plaintiff was put in a holding cell, without restraints, and he waited to take the witness stand.   After Plaintiff testified, he was placed in restraints again and transported to the JDC, where he was put in a cell.   At approximately 6:45 p.m., an officer put Plaintiff in leg irons and transported him back to Second Chance Youth Ranch.

Plaintiff claims that his seizure, detention, and other conduct on Defendants' part deprived him of several constitutional rights and violated state tort law.   By way of relief, Plaintiff seeks compensatory and punitive damages and attorney's fees and costs.

### III.

The State, Hunter, and Manning seek dismissal of all claims against them, asserting sovereign immunity, absolute prosecutorial immunity, and statutory immunity.

4

## Sovereign Immunity

The sovereign immunity of the States recognized in the Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the States' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edleman v. Jordan*, 415 U.S. 651, 663 (1974).   In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief.  *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir.1997).

Arkansas has not consented to suit in this case, and Congress did not abrogate the States' Eleventh Amendment immunity by enacting § 1983.  *See Singletary v. Mo. Dep't of Corrs.*, 423 F.3d 886, 890 (8th Cir.2005); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir.1991).  Accordingly, Plaintiff's claims against the State and his official-capacity claims against Hunter and Manning seeking money damages must be dismissed.[2]

### Absolute Prosecutorial Immunity

Hunter and Manning are entitled to absolute immunity from civil liability under

---

[2] Under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, but such relief must be aimed at preventing future violations of federal law.  In this case, Plaintiff does not seek injunctive relief and he does not allege ongoing violations of federal law.

5

§ 1983 for actions undertaken pursuant to their official duties as prosecutors.[3]  This

immunity covers prosecutorial functions such as the initiation of a criminal prosecution,

the presentation of the state's case at trial, and other conduct that is intimately associated

with the judicial process.  *See Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir.

1996).   However, "absolute immunity may not apply when a prosecutor is not acting as

'an officer of the court,' but is instead engaged in other tasks, say, investigative or

administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S. Ct. 855, 861

(2009).   Investigative acts outside the scope of absolute immunity include giving legal

advice to police during criminal investigation, before charges are filed, *Burns v. Reed*,

500 U.S. 478, 494–96, 111 S. Ct. 1934, 1943 (1991); conspiring to fabricate evidence

during preliminary investigation, before the convening of a grand jury, *Buckley v.*

*Fitzsimmons*, 509 U.S. 259, 274–76, 113 S. Ct. 2606, 2617 (1993); and making false

statements at a press conference announcing the return of an indictment, *id*. at 276–78,

113 S. Ct. at 2617.

In determining prosecutorial immunity, a court must examine "'the nature of the

function performed, not the identity of the actor who performed it.'"  *Kalina v. Fletcher*,

522 U.S. 118, 127, 118 S. Ct. 502, 508 (1997)(quoting *Forrester v. White*, 484 U.S. 219,

229, 108 S. Ct. 538, 545 (1988)).   While a prosecutor's actions may be "similar to those

---

[3]  The Supreme Court has explained that the public policy concern underlying absolute prosecutorial immunity is "that harassment by unfounded litigation" could "cause a deflection of the prosecutor's energies from his public duties" and lead the prosecutor to "shade . . . decisions instead of exercising the independence of judgment required by . . . public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423, 96 S. Ct. 984, 993 (1976).  Although absolute immunity "does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," the broader public interest would be disserved if prosecutors were constrained by fear of retaliation.  *See Imbler*, 424 U.S. at 427-28, 96 S. Ct. at 993-94.

performed by police or administrative agents of the state, [the] inquiry focuses not on whether the act could be performed by the police as investigators, but rather . . . whether the act was closely related to the [defendant's] role as an advocate for the state." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1267 (8th Cir. 1996)(citing *Buckley*, 509 U.S. at 272-273, 113 S. Ct. at 2615).

The affirmative defense of absolute immunity may be resolved as a matter of law on a motion to dismiss under Rule 12(b)(6) when the nature or function of the conduct at issue is clear from the face of the complaint.  In this case, the Court finds it clear that Hunter and Manning are immune from liability for activities related to obtaining the Order to Deliver.  Those activities were undertaken in preparation for trial, and they were not, as Plaintiff argues, investigatory in nature.  Even assuming that Hunter and Manning engaged in off-the-record communications with the trial court and misrepresented that Plaintiff was a juvenile delinquent and in state custody, the prosecutors were acting within the scope of their official duties.  *See Adams v. Hanson*, 656 F.3d 397(6th Cir. 2003)(holding that prosecutor's false, off-the-record statements before trial court regarding a witness's availability to testify, which resulted in the witness being arrested and detained for 12 days, were within the prosecutor's role as advocate for the state).

Plaintiff also alleges that three days before trial, Manning presented the Order to Deliver to the Jefferson County Sheriff's Department and verbally instructed Rowland to deliver Plaintiff to the JDC on March 11, 2016, three days before the criminal jury trial. Plaintiff contends that Manning's orders to Rowland were outside the scope of her prosecutorial duties and caused him to suffer a deprivation of constitutional rights.

7

Accepting Plaintiff's allegations as true, Manning's verbal instructions to Rowland were contrary to the terms of the Order to Deliver, which directed the Sheriff to pick up Plaintiff on March 14, 2016 and transport him to the Jefferson County Courthouse on March 14, 2016.[4]   To overcome the presumption that qualified rather than absolute immunity applies, Manning must show that she was functioning as the state's advocate when she ordered Rowland to seize Plaintiff and transport him to the JDC on March 11, 2016.  *See Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991)(citations omitted)(noting the presumption that qualified rather than absolute immunity applies and that "the  official seeking absolute immunity shoulders the burden to show that such immunity is justified for the function in question").  Manning does not argue that she had the authority to instruct Rowland as alleged.

In sum, the Court finds that Hunter's and Manning's alleged conduct in connection with obtaining an Order to Deliver is protected by absolute immunity, but Manning has failed to show that she is entitled to absolute immunity with respect to her verbal orders to Sergeant Rowland.

### *Statutory Immunity*

Defendants move to dismiss the tort claims against them in their individual capacities on the ground that they are barred under statutory law.  Section 19-10-305(a) of the Arkansas Code provides:

> Officers and employees of the State of Arkansas are immune from suit, except to the extent that they may be covered by liability insurance, for

---

[4]  The Order to Deliver directs the Superintendent/Director of the Second Chance Ranch to "have T.H. . . . available for transportation by the Sheriff of Jefferson County on the aforementioned dates," referring to the trial dates: March 14 and 15, 2016.

damages for acts or omissions, other than malicious acts or omissions, occurring within the scope and course of their employment.[5]

To prove malice a plaintiff must present evidence that the state official had an "'intent and disposition to do a wrongful act greatly injurious to another ... a conscious violation of the law . . . .'" *Okruhlik v. Univ. of Arkansas ex rel. May*, 255 F.3d 615, 627 (8th Cir. 2001)(quoting *Fuqua v. Flowers*, 341 Ark. 901, 20 S.W.3d 388, 391 (2000) (citations omitted)).  In his complaint, Plaintiff describes the complained-of conduct as "malicious," but the pleading is void of factual allegations to support a finding that Hunter and Manning intended to injure Plaintiff or that they consciously violated the law. Plaintiff notes that he is a foster child in the custody of the State, and he argues that this "special relationship" pierces any statutory immunity that might apply.  Arkansas law recognizes that "in some special circumstances, where the state has assumed a 'special custodial or other relationship' in respect of a particular person, the state's failure to protect that person might implicate the due process clause." *Shepherd v. Washington.* 331 Ark. 480, 493, 962 S.W.2d 779, 784 (1998)(citing *Estate of Gilmore v. Buckley*, 787 F.2d 714 (1st Cir.1986).  However, the Court finds no authority for the proposition that a custodial relationship with the State prevents the application of statutory immunity.

The Court finds that Hunter and Manning are entitled to statutory immunity from Plaintiff's tort claims to the extent that they are not covered by liability insurance. However, Defendants do not address, by affidavit or otherwise, whether they have liability insurance, thus the Court is unable to resolve the statutory immunity issue on the

---

[5]  Ark. Code Ann. § 19-10-305(a).

present record.  Denial of this portion of the motion to dismiss is without prejudice, and

Defendants may renew their motion with information regarding liability coverage.

## IV.

Plaintiff seeks to file an amended pleading that identifies John Doe Defendants,

sets forth additional factual allegations, and "adds a claim against the State of Arkansas

for racial and color discrimination under Victims of Crimes Act . . . 42 U.S.C.

§ 10604and 42 U.S.C. § 2000(d)."[6]   For reasons that follow, the motion is granted to the

extent that Plaintiff seeks leave to identify John Doe Defendants and provide additional

factual allegations, but the motion is denied insofar as Plaintiff attempts to assert a claim

for race discrimination.

Notwithstanding the general liberal standards for amending a complaint, denial of

leave to amend may be justified if the proposed amendment would be futile.  *See Knapp*

*v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999).  An amendment is futile if it could not

withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Cornelia I.*

*Crowell GST Trust v. Possis Medical, Inc*., 519 F.3d 778, 782 (8th Cir. 2008).

Title VI of the Civil Rights Act of 1964, prohibits discrimination by any programs

or activity receiving federal financial aid, and private individuals may sue to enforce

Title VI's antidiscrimination provision.  In his proposed amended pleading, Plaintiff

---

[6]   ECF 18, ¶ 3.  The Victims of Crime Act of 1984 established a fund to compensate victims of crime, and contrary to Plaintiff's suggestion, it does not provide a private cause of action for race discrimination.  *See* 42 U.S.C. § 10601(a)(establishing a federal source of funds for programs that compensate and assist crime victims); § 10601(d) (allocating moneys among programs); § 10602 (delineating eligible compensation programs); § 10603 (delineating eligible assistance programs).  The Act includes several mechanisms to provide money for the fund, including a mandatory penalty assessment upon convicted federal defendants.  *See* 42 U.S.C. § 10601(b)(2); 18 U.S.C. § 3013.

alleges that the State and the Prosecuting Attorney's Office for the Eleventh Judicial District receive federal funding.  He further alleges that the Prosecutor's Office orchestrated his arrest and detention and forced him to appear as a witness at trial but did not subject a white person to similar treatment.  To prove intentional discrimination under a disparate treatment theory, Plaintiff must show that a specific non-member of his protected class shared his circumstances but received favorable treatment.  The proposed amended pleading fails to allege disparate treatment or any facts supporting a claim of intentional race discrimination.  Plaintiff merely alleges that defendants did not subject "a Caucasian or white person" to the same treatment that he endured.  These allegations do not state a claim for intentional discrimination and would not survive a Rule 12(b)(6) challenge.

## V.

IT IS THEREFORE ORDERED the Separate Defendants' motion to dismiss [ECF No. 7] is GRANTED IN PART AND DENIED IN PART as follows:

(a)  All claims against the State of Arkansas and Defendants S. Kyle Hunter and Karres D. Manning, in their official capacities, are DISMISSED WITH PREJUDICE.

(b)  All § 1983 claims against Defendants S. Kyle Hunter and Karres D. Manning, in their individual capacities, related to conduct aimed at obtaining an Order to Deliver are DISMISSED WITH PREJUDICE.

(c)  Section 1983 claims against Defendant Karres D. Manning, in her individual capacity, related to the execution of an Order to Deliver remain.

11

(d)  All claims under state tort law against Defendants S. Kyle Hunter and Karres D. Manning remain.  However, Defendants may reassert statutory immunity with information regarding liability insurance.

IT IS FURTHER ORDERED that Plaintiff's motion to amend [ECF No. 18] is GRANTED IN PART AND DENIED IN PART.  Plaintiff's motion is denied to the extent that he attempts to join a claim asserting race discrimination.  Plaintiff shall file an amended complaint that is consistent with this holding within five (5) days from the entry date of this order.

IT IS SO ORDERED THIS 24TH DAY OF AUGUST, 2017.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE