IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS.
PINE BLUFF DIVISION

[T. H.], a Minor, by and through Next Friend and
Guardian of the Estate, CHARLES HOSKYN

**PLAINTIFF**

VS.                                CASE NO. 4:17-CV-00133

S. KYLE HUNTER, et al

**DEFENDANTS**

## SEPARATE DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO JEFFERSON COUNTY, ARKANSAS

Comes Separate Defendants, Gerald Robinson, in his individual and official capacities as the Sheriff of Jefferson County, Arkansas, Dorothy Rowland, Lee Johnson, Tina Adams, and John Does 2-6, in their individual and official capacities, by and through counsel, C. Burt Newell and Ralph C. Ohm, responds to Plaintiff's First Set of Interrogatories as follows:

**INTERROGATORY NO. 1:** If you contend plaintiff did not satisfy all administrative prerequisites to filing suit, state with particularity and detail all facts supporting the contention.

**RESPONSE:** N/A, that is not a contention.

**INTERROGATORY NO. 2:** If you contend you have a defense to plaintiff's complaint and allegations, please state with particularity and detail all facts supporting your defense.

**RESPONSE:** Objection to the extent it seeks the work product of undersigned counsel in that it seeks his thoughts, theories and strategies. Subject to, and without waiving the foregoing objection, denials and defenses are stated in the Answer to Plaintiff's Complaint.

Page 1 of 16


EXHIBIT
4

**INTERROGATORY NO. 3:**    If you contend plaintiff's complaint contains any errors of fact, please state with particularity and detail the factual errors in plaintiff's complaint.

**RESPONSE:**    Objection to the extent it seeks the work product of undersigned counsel in that it seeks his thoughts, theories and strategies.  Subject to, and without waiving the foregoing objection, allegations of fact in the Complaint to which denials have been pled in the Answer are contended to be examples of errors of fact.

**INTERROGATORY NO. 4:**    Identify and state the full name, badge or identification number, rank or title, date of birth, and present height and weight of all officers or employees of Jefferson County Sheriff's Department who participated in the arrest, transport, booking and detention of plaintiff.

**RESPONSE:**

R.C. Toney - Transportation/Juvenile Detention Officer, Height 5'7", Weight: 200 lbs., ┌

Corp. Tina Adams - Detention Officer, ... it: 6', Weight: 275 lbs., DOB:

Sgt. Dorothy Rowland - Jefferson County Sheriff's Office, Height: 5'5", Weight: 250 lbs.,

Gary Lee - Jefferson County Sheriff's Officer, Height: 5'5", Weight: 140 lbs., DOB: ---

**INTERROGATORY NO. 5:**    Identify and state the full name, bndge or identification number, rank or title, date of birth, and present height and weight of all officers or employees of Jefferson County Sheriff's Department who are named as John Does 2 through 6, unknown officers in plaintiff's complaint.

**RESPONSE:**    To the best of Separate Defendants' knowledge and belief, the John Does 2-6 are: R.C. Toney, Capt. David Smithwick, Sgt. Dorothy Rowland, Deputy Sandra Harper, and Gary Lee.

## INTERROGATORY NO. 6:

Identify all prior incidents involving an accusation for abuse of authority, excessive forced, assault, battery, false imprisonment, abuse4 of process or outrage against each officers named in the complaint or in your response to Interrogatory No. 5 above.  Respond as follows:

    a.  State the date of the incident;

    b.  Identify the officer accused;

    c.  State the surrounding circumstances and a description of the alleged infraction;

    d.  State the final resolution of the incident.

**RESPONSE:**    None.

## INTERROGATORY NO. 7:

Identify all disciplinary actions taken or internal investigations relating to the conduct of each officer or employee named in plaintiff's complaint or in your response to Interrogatory No. 5 above.  Respond as follows:

    a.  State the date of the incident;

    b.  Identify the officer accused;

    c.  State the surrounding circumstances and a description of the alleged infraction;

    d.  State the final resolution of the incident.

**RESPONSE:**    N/A.

## INTERROGATORY NO. 8:

State the educational requirements for service as a officer, agent or employee of Jefferson County Sheriff's Department and Jefferson Juvenile Detention Facility.

**RESPONSE:**    **Officers are required to have attained a high school diploma or equivalent.**

**INTERROGATORY NO. 9:**   State the education level by each of the agents or employees of Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility who participated in the arrest, transport, booking and detention of plaintiff.  Include name and address of each institution, the date of attendance, and the degree or certificate received.

**RESPONSE:**   R.C. Toney - 1976 graduate of Grady High School, Hwy 65, Grady, AR; Tina Adams - 1997 graduate of Lee High School, 523 Forrest Avenue, Marianna, AR, 2005 Phillips County Community College Cosmetology degree; Dorothy Rowland - 1978 graduate of Pine Bluff High School, 1989-1990 - U.A.P.B. Colleged; 2001 - Arkansas Law Enforcement Training Academy (ALETA); Gary Lee - graduate pf Creekside High School in Creekside, Georgia, 2015 - ALETA.

**INTERROGATORY NO. 10:**   Identify and state the training or experience required for service as an officer for Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility.

**RESPONSE:**   Please refer to response to Interrogatory No. 8 above.  In addition, new full-time employees are required to receive orientation/training before being independently assigned to a particular job.  This orientation and training shall include a minimum of forty (40) hours of in-service training the first year and thereafter sixteen (16) hours of continuing education.

**INTERROGATORY NO. 11:**   Identify and describe the internal administrative policies and procedures for addressing complaints and correcting instances of civil rights violations, abuse of authority, excessive force, assault, false imprisonment, intentional infliction

of emotional distress, outrage or abuse of process by officers of Jefferson County Sheriff's Department and Jefferson County Juvenile Detention Facility.  Responds as follows:

**RESPONSE:**            The Jefferson County Juvenile Justice Center utilizes the Jefferson County Sheriff's policy and procedure manual for addressing complaints and policy violations by staff and residents. (Enclosed are copies of: Title 3 Section 2 - Standard of Conduct/Discipline, Title 3 Section 3 - Grievance Procedure, and Title 3 Section 4 - Records of Disciplinary Actions policies).

a.  State whether the procedures include investigation of complaints and disciplinary consequences;

**RESPONSE:**            Informal complaints and disciplinaries are investigated by the Juvenile Center's supervisory and administrative staff.

b.  Identify each person responsible for overseeing or initiating the procedures;

**RESPONSE:**            Formal complaints, including possible criminal activity, are referred to the Jefferson County Sheriff's Office's Internal Affairs Division or Criminal Investigation Department.  The Juvenile Administrator or his/her designee will initiate the process by notifying said departments or supervisors.

c.  Identify each person responsible for the ultimate decision on the complaint.

**RESPONSE:**            The Juvenile Administrator will make the ultimate decision to resolve informal complaints and disciplinaries.  The Jefferson County Sheriff or his designee will make the ultimate decision to resolve formal complaints and disciplinaries.

**INTERROGATORY NO. 12:**            Specify the administrative procedures used in response to the claim made by plaintiff and the ultimate decision on that claim.

**RESPONSE:**         It is unknown what "claim" is referred to in this Interrogatory.

**INTERROGATORY NO. 13:**         Describe in specific detail the events leading up to and following the arrest, transport, injury, booking and detention of plaintiff.

**RESPONSE:**         Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, Deputy Prosecuting Attorney, Karess Manning, present an Order to Deliver (copy enclosed) to the Jefferson County Sheriff's Officer Sgt. Rowland to deliver T      B      for trial on Monday, Marh 14, 2016.   Deputy Prosecuting Attorney Manning subsequently communicated verbally with Sgt. Rowland that T         H should be delivered to the Juvenile Detention Center on March 11, 2016 and housed pending trial.   This verbal order was communicated by Sgt. Rowland to Juvenile Transport Officer R.C. Toney.   Based on the communication between Prosecutor Manning and Sgt. Rowland, Officer Toney took the Order to Second Chance Ranch.   T         H      was not there, he was at school.   Officer Toney went to the school and transported him to the Juvenile Justice Center.   This Order did state that T         H      was a "juvenile delinquent" and that he was now "confined in said facility" (Second Chance Ranch).

Officer Toney was instructed by Sgt. Rowland to notify her when he returned to the Juvenile Justice Center with T         H      Sgt. Rowland advised Officer Toney that she would contact Deputy Prosecutor Manning upon his arrival.

Upon arrival at the Juvenile Center, T         H      D.H.S. case worker, Ana Ortiz, met with Prosecutor Manning in an attempt to gain custody of T         H      .   Ms. Ortiz stated she was denied custody and was informed by Prosecutor Manning that

T    ⌐ H        was "in the Sheriff's cstody" and "it was protocol to detain a witness for their safety".  It was reported that Prosecutor Manning interviewed T        H    on several occasions during his stay at the Juvenile Justice Center.

On March 14, 2016 at approximately 5:40 p.m., a call was received by the Juvenile Administrator regarding T    H    , stay.  After discussing the incident with Ombudsman Scott Tanner, arrangements were made to have T        H    immediately transported back to Second Chance Ranch.  Jefferson County Sheriff's Officer Gary Lee was the transporting officer.

## INTERROGATORY NO. 14:

Identify all previous complaints or lawsuits that have been filed against law enforcement personnel or employees of Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility that charged them with civil rights violations, abuse of authority, battery, assault, false imprisonment, outrage, intentional infliction of emotional distress, or abuse of process within the last five years preceding the date of the events giving rise to this lawsuit.  Include the following:

a.  Whether the complaint or lawsuit was based on facts leading up to and related to an arrest;

b.  The identify of each complaint;

c.  The outcome of the complaint.

## RESPONSE:

Listed below are lawsuits/complaints for the five (5) years preceding the date of the events giving rise to this lawsuit:

Jimmy Lee Douglas, Jr., *Pro Se* v. Rosemary White, Ed Adams, Willie Thomas, Sherrell DeBerry
USDC Case No. 5:16-cv-00331
Allegations of: Excessive force, denial of adequate medical care
Currently Pending

Christopher Deshaun Holder , *Pro Se* v. Surrell Deberry, Greg Bolin, Ed Adams, Delucas Etherly
USDC Case No. 5:16-cv-00370
Allegations of: Excessive force, denial of due process
On 4/17/17 the Court's issued its Recommended Disposition to dismiss Plaintiff's Complaint

Dedric Jones v. Randy Jackson, Jefferson County, Sheriff Gerald Robinson (Note: counsel does not represent Randy Jackson)
USDC Case No. 5:15-cv-00213
Allegations of:  Excessive Force; Arkansas Civil Rights Act; Failure to Train; Unconstitutional Policies and Procedures; Tort of Battery; Tort of Outrage
Defendants' Motion for Summary Judgment pending before the Court

Claude B. Oakley , *Pro Se* v. G. Canada, David Williams
USDC Case No. 5:15-cv-00113
Allegations of: Excessive force
Defendant's Motion for Summary Judgment pending before the Court

Kristina Quarles , *Pro Se* v. Rosemary White, Corporal
USDC Case No. 5:14-cv-00178
Allegations of: Excessive force; racial slurs; no response to grievances
Plaintiff's Voluntary Motion to Dismiss was granted on 12/10/14

Orlando Lancaster , *Pro Se*  v. Courtney Kelly
USDC Case No. 5:13-cv-00298
Allegations of: Excessive force; no TB lights in jail cell
06/30/14 Dismissed in Defendant's favor

Kristina Quarles , *Pro Se* v. Mickey Buffkin, Dot Rowland, Glenn Barnes, David Cockrell
USDC Case No. 5:14-cv-00273
Allegations of: Excessive force used during arrest
Plaintiff's Voluntary Motion to Dismiss granted on 12/17/15

William Robinson , *Pro Se*  v. Willie Thomas, Ed Adams
USDC Case No. 5:16-cv-00342
Allegations of: Excessive force
Currently Pending

Steve Ault v. Sam Baker, Sheriff Gerald Robinson
USDC Case No. 4:12-cv-00228
Allegations of: Excessive force against Baker; Failure to train against Robinson
On 3/27/13 Plaintiff's Motion for Default Judgment granted; dismissed failure to train claim again Robinson; the Parties settled prior to a jury trial on damages

Karen Walls, et al vs. Judge Earnest Brown, Jose Riveria, Rod Shelby Sheriff Gerald Robinson (Note: counsel only represented Sheriff Robinson and Jose Riveria)
USDC Case No. 5:111-cv-174 BSM
Allegations of: Excessive force
Jose Riveria dismissed on 11/09/12 - he did not work for the Jefferson County Sheriff's Dept.; the Parties settled

Ricky D. London, Jr., *Pro Se* v. James Sanders, Roger Williams
USDC Case No. 5:14-cv-00106
Allegations of: Excessive force
11/30/15 After an evidentiary hearing Judgment granted in Defendants' favor

Edmond McClinton , *Pro Se* v. Jefferson County, Sheriff Gerald Robinson, Greg Bolin
USDC Case No. 5:14-cv-00097
Allegations of: Denial of First Appearance, Denial of Due Process
02/05/15 Court issued Judgment deny Plaintiff's Motion for Summary Judgment and dismissed his Complaint stating that Plaintiff's claims lacked merit; Plaintiff filed an appeal which was dismissed by the 8th Cir. Court of Appeal

Jay Daniel Sanders, *Pro Se* v. Ed Adams, Greg Bolin
USDC Case No. 5:16-cv-00032
Allegations of: Excessive Force
After a bench trial the Court issued its Judgment in favor of Defendants on 02/14/17

Donty Simmons, *Pro Se* v. Ed Adams, reg Bolin, Tony Maddox, Defarria Lewis, Michelle McCarter, Tasha Clark
USDC Case No. 5:14-cv-00151
Allegations of: Excessive force
08/20/14 Court dismissed lawsuit for Plaintiff's failure to obey the Orders of the Court

Molly McCool , *Pro Se* v. Joyce Marshall, Tamy DeBerry, Carolyn Kenttle
USDC Case No. 5:14-cv-00261
Allegations of: Excessive force
02/05/15: Court granted Defendants' Motion for Summary Judgment and ruled Plaintiff's Complaint as frivolous

Ramon Hosea McGraw, *Pro Se* v. Ed Adams, Christy Brooks, Darinda Smith, Curtis Butler, Verna Reed
USDC Case No. 5:12-cv-00260
Allegations of: Excessive Force; failure to train
After a jury trial, the jury found in favor of the Defendants

Ramon Hosea McGraw, *Pro Se* v. Jefferson County, Ed Adams
USDC Case No. 5:12-cv-00314
Allegations of: Denial of Due Process - not receive copy of disciplinary report providing written notice of the charges against him and not allowed to call witnesses on his behalf
After a bench trial, the Court ruled in Defendants' favor on 7/11/13

Kristina Wright Quarles, *Pro Se* v. Tyra Tyler, Greg Bolin, Roberta Lewis
USDC Case No. 05:13-cv-00165
Allegations of: Violation of Eighth Amendment, Unlawfully Restraining Plaintiff, Excessive Force, Failure to Intervene
08/22/13 Court dismissed lawsuit for Plaintiff's failure to obey the Orders of the Court

**INTERROGATORY NO. 15:** If any of the officers or employees of Jefferson County Sheriff's Department who participated in the arrest, transport, injury or detention of plaintiff drank any alcoholic beverages or ingested any intoxicating substances before coming on duty or during the course of their assignment, identify the substances and the amount ingested by each person.

**RESPONSE:** None; therefore, N/A.

**INTERROGATORY NO. 16:** Identify and describe the reasons for plaintiff's arrest, transport, booking and detention and include the following:

**RESPONSE:** Unknown; these Separate Defendants have no knowledge of statements made in procurement of the order.

a. The circumstances that led the officers to believe there was probable cause to arrest, transport, book or detain plaintiff;

**RESPONSE:** Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute. Subject to, and without waiving the foregoing objection, the Order also states that the officers are ordered to take custody of T       H       from the Second Chance Ranch "who is now confined in said facility". Secondly, it was verbally communicated by Deputy Prosecuting Attorney Manning to the sheriff officer, transport officer, and booking officer to detain T H on March 11, 2016 pending trial on March 14, 2016.

b. Whether plaintiff was informed that he was under arrest, being transported, being booked or being detained and, if so, what you said and by whom it was said.

**RESPONSE:** Separate Defendants object to this Interrogatory on the

grounds that it is premised on facts that are in dispute.  Subject to, and without waiving the foregoing objection, the transport officer did not tell T    ·    H    he was under arrest.  He informed him that he was being transported to the Jefferson County Juvenile Justice Center to be a witness in a criminal trial.  He informed T        H        of this in the presence of the school counselor and school resource officer.

   c.   Whether plaintiff or any person acting on plaintiff's behalf said anything in response to the verbal command of arrest and the specific action plaintiff took immediately after being advised he was under arrest or being detained.

   **RESPONSE:**        Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.  Subject to, and without waiving the foregoing objection,  Plaintiff took no specific actions upon being told he was being transported for trial.  During the booking process T        H        'as informed that he was being held by order prepared by the prosecuting attorney's office and signed by Judge Berlin Jones, pending witnessing at a criminal trial on March 14, 2016.

   d.   All details about the manner of effecting the arrest, transport or detention.

   **RESPONSE:**        Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.  Subject to, and without waiving the foregoing objection, as aforementioned, T        H        was transported without incident, Transport Office Toney arrived at the Second Chance Ranch and was advised that T     ·   H     was at school.  The school counselor called T        H'     to her office, in the presence of the school resource officer, where he was told he was being transported.

   e.   Whether plaintiff was charged, and, if so, what the charge was.

**RESPONSE:**    Plaintiff was never told he was being charged of an offense. Juvenile Detention staff placed him in a single cell in isolation from other juvenile offenders for his safety.

**INTERROGATORY NO. 17:**    If any officers or other persons present at the arrest, transport, booking or detention of plaintiff place handcuffs, ankle cuffs, transport restraint device or any other mechanism restricting plaintiff's free movement on plaintiff, identify each officer and the weapon drawn and state the reason for such action.

**RESPONSE:**    Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, Plaintiff was placed in handcuffs and ankle cuffs by Officer Toney and Office Lee for transporting purposes only pursuant to policy and procedure requiring that juveniles, when being transported be mechanically restrained.  (A copy of Policy # 6-1014 - Vehicle Security - Transportation is enclosed).

**INTERROGATORY NO. 18:**    State with particularity and detail defendant's contention for how plaintiff's arrest, transport, booking and detention occurred.

**RESPONSE:**    Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, already asked and answered above.

**INTERROGATORY NO. 19:**    Identify and describe all physical contact or force used by the officers or employees of Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility during plaintiff's arrest, transport, booking and detention.

**RESPONSE:**    Separate Defendants object to this Interrogatory on the

grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, none other than the use of mechanical restraints during the transport of the Plaintiff as per policy.

### INTERROGATORY NO. 20:

If plaintiff was placed in custody, state the duration of that custody and state whether any documents, video, photographic or audio images, surveillance or recordings of plaintiff were created and in your control, custody or possession.

**RESPONSE:**   Juvenile T        H    was placed in custody at approximately 10:45 a.m.  Records indicate he was booked in at the Jefferson County Juvenile Justice Center at 1:42 p.m. on March 11, 2016.  He was released from the Juvenile Justice Center on March 14, 2016 at 6:42 p.m. and was then transported back to Second Chance Ranch.  (A copy of T        H        Booking and Release Reports Client Information sheet, Personal Effects Inventory Report, Approved Visitor Report, Check Out Sheet, and Resident's Rules and Information, Offence/Incident Reports prepared by Sgt. L. Rice and Capt. Smithwick are enclosed).

There are no videos, photographic or audio images, surveillance or records of plaintiff created or in these Separate Defendants control, custody, or possession.

### INTERROGATORY NO. 21:

If an internal investigation was conducted by Jefferson County Sheriff's Department or any other agency regarding plaintiff's arrest, transport, booking or detention, identify the documents that were created or issued or any actions that were taken as a result of the investigation.

**RESPONSE:**   Please refer to attached documents referred to as Interrogatory # Document 21.

**INTERROGATORY NO. 22:**   Identify any videos, phoographs, audio recordings, files documents, records or reports whether tangible or intangible resulted from Plaintiff's arrest, transport, injury, and detention.

**RESPONSE:**   Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, already asked and answered in the preceding Interrogatories.

**INTERROGATORY NO. 23:**   Identify all documents, including reports created or statements taken or received by any officer or other employee of Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility, related to the arrest, transport, injury, booking or detention of plaintiff and the conduct of those present for present for these events.

**RESPONSE:**   Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, already asked and answered in the preceding Interrogatories.

**INTERROGATORY NO. 24:**   If defendant contends that the officers acted according to the established policies and customs of Jefferson County Sheriff's Department or Jefferson County Juvenile Detention Facility at the time of plaintiff's arrest, transport, injury, booking or detention, identify the oplicy and custom and state with particularity all facts supporting the contention.

**RESPONSE:**   Separate Defendants object to this Interrogatory on the grounds that it is premised on facts that are in dispute.   Subject to, and without waiving the foregoing objection, Juvenile law requires the juvenile intake officer to authorize or

refuse the detention of juveniles.  D.H.S. worker Ana B. Ortiz offered to place T

H    in D.H.S. custody pending the March 14, 2016 trial, however, Prosecutor Manning advised her that "it was to protocol to detain a witness for trial".

It should also be noted that personnel at Bryant Middle School released T

H    to Officer Toney based on the Court's Order to Deliver.  These Separate Defendants were following the Court's Order and the verbal orders of Deputy Prosecutor Manning.

Please refer to the enclosed policies in response to the above Interrogatories and Interrogatory No. 25 below.

**INTERROGATORY NO. 25:**    Identify the policies and procedures used by the Jefferson County Juvenile Detention Facility and Jefferson County Sheriff's Department for placing a person in detention, and please identify the specific policy used to detain plaintiff for the weekend beginning on Friday, March 10, 2016.

**RESPONSE:**    Enclosed is a copy of the Jefferson County Juvenile Justice Center Policy No. 9-1001 - Admission Procedures and Jefferson County Sheriff's Procedures for Juvenile Offenders policy.  Furthermore, Separate Defendants deny that Plaintiff was detained on March 10, 2016 - the proper date was Friday, March 11, 2016.

Respectfully submitted,
ON BEHALF OF SEPARATE DEFENDANTS,

By: _____
C. Burt Newell, Bar No. 82118
Attorney for Separate Defendants
P.O. Box 1620
Hot Springs, AR 71902-1620
(501) 321-2222
Fax (501) 624-0533

aperma@hotspringslaw.net

Ralph C. Ohm, Bar No. 82119
Attorney for Separate Defendants
P.O. Box 1558
Hot Springs, AR 71902-1558
(501) 624-7555
Fax (501) 624-7575
aperma@hotspringslaw.net

## CERTIFICATE OF SERVICE

I, C. Burt Newell, hereby certify that I have on this 28th day of April, 2017, I have mailed the documents by the United States Postal Service to the following participants:

Via E-Mail and U.S. Mail
Andrew D. Ballard
BALLARD & BALLARD, P.A.
425 W. Broadway Street, Suite N
North Little Rock, AR 72114

Brett W. Taylor
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, AR 72201

By: _____
C. Burt Newell, Bar No. 82118

## VERIFICATION

STATE OF ARKANSAS      )

                       )

COUNTY OF JEFFERSON    )

I, GERALD ROBINSON state upon oath that the statements contained in the above and foregoing pleading are true and correct to the best of my information, knowledge and belief.

GERALD ROBINSON

SUBSCRIBED AND SWORN to before me, a Notary Public, this _19_ day of April ____, 2017.

NOTARY PUBLIC

My Commission Expires:

(seal)

DECEMBRA ATKINS
Jefferson County
Commission Number 12694321
Notary Public - Arkansas
My Commission Expires May 14, 2025

## JEFFERSON COUNTY JUVENILE JUSTICE CENTER

To:        Captain Terry Peckham

From:      Lee A. Johnson

Subject:   Request for Internal Affairs Investigation

Date:      March 17, 2016

### MEMORANDUM

Ms. Lakeysia Wilson, Arkansas D.H.S. Compliance Monitor has requested an investigation report of the following incident:

On March 14, 2016 at approximately 5:40 p.m. State Juvenile Ombudsman, Scott Tanner, called me in reference to juvenile T        H        He advised that we did not have proper authority to hold juvenile H        and that he should be returned to the Second Chance Ranch in Bryant, Arkansas immediately. See attached court order.

I spoke with the staff who were directly involved and Sgt. D. Rowland to determine why T        H        was transported to J.J.C.  They informed me that Sgt. D. Rowland and Juvenile Deputy Prosecutor Karness D. Manning had made arrangements to hold juvenile H        at J.J.C. Officer R.C. Toney picked up juvenile H        from the Ranch and delivered him to the J.J.C. on March 11, 2016 at 1:42 p.m. Mr. Toney stated he made this transport on instructions from Captain Smithwick, Sgt. Rowland, and the order from the prosecuting attorney.

After meeting with Ms. Wilson, she concluded that the order was misleading; because it implied that T        H        was a juvenile **delinquent**. Also, that he was

#21

@006/016

confined at the Second Chance Ranch. She further stated since H        was a trial witness and not a delinquent, he should have been transported to court by his Custodian (Second Chance Ranch). Her major concern for the investigative report is to determine why the juvenile was placed at J.J.C.

Ms. Wilson stated she would return to the Juvenile Justice Center within thirty (30) days. She said she would like a copy of the investigative report at that time. She stated she would also conduct a training session for juvenile staff on detaining status offenders.

cc:    Sheriff Gerald Robinson
       Chief Deputy Stanley James

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

STATE OF ARKANSAS

VS.                                                                    PLAINTIFF

35CR-2014-436

SAMUEL EVANS

**ORDER TO DELIVER**                                    DEFENDANT

THE SHERIFF OF JEFFERSON COUNTY, ARKANSAS:

You are hereby ordered and directed to take custody from the Second Chance Ranch, 21815 Int 30, Bryant, AR 72002, a juvenile delinquent, T       H       , B/M DOB: , who is now confined in said facility and deliver him to Jefferson County Courthouse, 100 West Barraque Street, Pine Bluff, AR 71601, on <u>Monday, March 14-15, 2016 at 1:00 p.m.</u>, for the purpose of a criminal jury trial.

The Superintendent/Director of the Second Chance Ranch, is hereby ordered to have T       H       B/M DOB:                          available for transportation by the Sheriff of Jefferson County Arkansas on the aforementioned dates.  That Sheriff of Jefferson County Arkansas is to deliver T       H       B/M DOB:                          to the Jefferson County Courthouse on <u>Monday, March 14-15, 2016 at 1:00 p.m.</u>, for the purpose of a criminal jury trial.

The Sheriff of Jefferson County, Arkansas is further ordered to return custody of said juvenile delinquent to the Second Chance Ranch upon completion of said jury trial.

IT IS SO ORDERED this 10th day of March, 2016.

_____
CIRCUIT JUDGE

SUBMITTED BY:

_____
KARRES D. MANNING
DEPUTY PROSECUTING ATTORNEY

FILED

MAR 10 2016

LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS

Ø001/002



### GERALD ROBINSON
SHERIFF OF JEFFERSON COUNTY
P.O. Box 7837
PINE BLUFF, ARKANSAS 71611

CHIEF DEPUTY, Stanley James
OPERATIONS COMMANDER, Major Lafayette Woods, Jr.
JAIL ADMINISTRATOR, Greg Bolin

ADMINISTRATIVE OFFICE: 870-541-5351 ○ FAX 870-541-5348
INVESTIGATIONS: 870-541-5496 ○ FAX 870-541-5499
PATROL: 870-541-5376 ○ FAX 870-541-5379
WARRANTS/CIVIL PROCESS: 870-541-5349 ○ FAX 870-541-5348
DUB BRASSELL DETENTION CENTER: 870-541-4620 ○ FAX 870-541-4624



# FAX COVER

TO: Burt Newell

FROM: Stanley James

DATE: 4-26-17

RE: Order CI

FAX #: 501-624-7575 #

TOTAL NUMBER OF PAGES INCLUDING COVER PAGE: 2

IF YOU DO NOT RECEIVE THE PAGE(S) INDICATED OR IF THEY ARE NOT LEGIBLE, PLEASE CONTACT THIS OFFICE AT (870) 541-5351.

IMPORTANT: This facsimile transmission may contain confidential information, some or all of which may be protected information as defined by our agency. This transmission is intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is propriety, privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient (or an employee or agent responsible for delivering this facsimile transmission to the intended recipient), you are hereby notified that any disclosure, dissemination, distribution or copying of this information is strictly prohibited and may be subject to legal restriction or sanction. Please notify the sender by telephone (number listed above) to arrange the return or destruction of the information and all copies.

To Whom It May Concern:

From: Ana Ortiz (Former) FSW, Department of Human Service, Division of Children and Family Services

Date: March 18, 2016

Subject: 3/11/16 T. H         Incident

On 3/11/16 I was advised that T         H         was brought in and being booked into the Jack Jones Detention Center. I was informed that he was picked up from his school and detained for the weekend due to lack of transportation by the Sherriff's Department for the time period indicated on the court order, 3/14/16. I was directed to Prosecutor Manning for clarification. I spoke with Prosecutor Manning and I advised her that T         H         was being booked and detained and wanted to get clarification as to why he was being detained. She stated that there was no transportation available to ensure his courthouse appearance on the aforementioned date. I told her that I was en route to see him because he was afraid, confused, and asking questions. Prosecutor Manning stated she would meet me at the detention center and she could answer my questions there.

I alerted my supervisor, FSWS Berry, about the situation and she accompanied me to the detention center to meet with T         and Prosecutor Manning. Upon arrival prosecutor Manning was interviewing T         . I waited until prosecutor Manning waived me into the room once she completed her interview with T         I asked Prosecutor Manning for clarification. I asked her if indeed T         was in fact detained simply because transportation was not available for him on Monday (3/14/16) She said, yes. I pleaded with Prosecutor Manning to release T         back into my custody and ensured her that I would personally transport him for the court hearing on Monday. She briefly attempted to make a call and then stated that she could not release T         because he was in the Sheriff's custody and it was protocol to detain a witness for their safety. I assured Prosecutor Manning that the Department has placed T         in a licensed foster care facility and that we could guarantee his safety and his appearance for court. This information did not persuade Prosecutor Manning and we were not able to secure T         release. We had to tell T         that he would have to be detained for the remainder of the weekend.

After Prosecutor Manning left the detention center, My supervisor and I were able to obtain a copy of the court order in which T         was picked-up and detained with. The order clearly states T         was to be transported to the courthouse on 3/14/16. Ms.

Adams has always gone above and beyond the call of duty for the children in her care. She has always notified me of any changes pertaining to my clients. During this incident she was able to assist and direct me to points of contacts that could

'GATORY #
ENT)   13, 22, 23, 24
        & 25

possibly assist to secure T            release, however, due to how late in the day it was we were unsuccessful to speak to anyone to include: Judge Jones' office, who signed the order, and the Sheriff's Department. We also solicited assistance from Chief of Staff Shelby to no avail.

While T            ı was detained for the weekend, Ms. Adams and Sgt Rice ensured that T            ı was comfortable and were accommodating when I called to see how T            was doing. Ms. Adams was also was helpful to ensure that Γ            ı was able to receive his change of clothes for court and his daily medication that had to be delivered by the personnel of his current placement.

Please feel free to contact me if you need additional information at (713) 298-7322.

Very Respectfully,

Ana B. Ortiz
8141 Lull Dr.
White Hall, AR 71602

# Jefferson County Juvenile Detention Center
## Release Report

**Name:** H     Γ

**JJCNum:**

**Booking Time:** 1:42 PM    **Booking Date:**   3/11/2016

**Booking Officer:** T,ADAMS    **Room:** C07

| | |
|---|---|
| **Release Date:** | 3/14/2016 ☑ Released |
| **Release Time:** | 6:42:11 PM |
| **Releasing Officer:** | CPL.SPEARS |
| **Released To Name:** | SECOND CHANCE RANCH |
| **Released To Agency:** | |
| **Transporting Officer:** | JEFFERSON COUNTY SHERIFF |
| **Release Reason:** | SHERIFF ORDER |

**Personal Effects Returned**

| Item | Item | Description |
|---|---|---|
| 5E+0 | SHOES | BLACK NIKE |
| 5E+0 | SOCKS | BLACK |
| 5E+0 | SHORTS | NAVY SHORTS |
| 5E+0 | BOXERS | GREEN |
| 5E+0 | SHIRT | BLACK |
| 5E+0 | HOODIE | BLUE |

NTERROGATORY #   *20, 22, 23*
DOCUMENT)

I hearby swear that the above information is true and correct and that I have received my personal items as listed on this report.

Inmate signature: _____

Witnessed by: _____

Monday, March 14. 2016

Page 1 of 1

# Jefferson County Juvenile Justice Center
## Client Information

**Name:** H       T
**Alias:**
**SSN:**
**DOB:** ███████         **Age**   14
**Race:**  B
**Sex:**  M
**Gang:**
**Ht:**     5'7     **Wt:** 165     **Hair:** BLACK       **Eyes:** BROWN

**Address:**
21815 INT 30                                    **Phone:**

PINE BLUFF            AR    71601          **School:**

**Parent or Guardian:**
DHS
☐ **Emergency Contact**
☐ **Legal Guardian**
**Address:**
21815 INT 30

PINE BLUFF            AR    71601

**Home:**
**Work:**
**Cell:**

**Parent or Guardian:**

☐ **Emergency Contact**
☐ **Legal Guardian**
**Address:**

PINE BLUFF                              AR    71601
**Home:**
**Work:**
**Cell:**

| | Officer | Start | End | Released? |
|---|---|---|---|---|
| **Probation** | | | | ☐ |
| **FINS** | | | | ☐ |
| **Diversion** | | | | ☐ |
| **TC Diversion** | | | | ☐ |
| **Drug Court** | | | | ☐ |
| **Electronic Monitor** | | | | ☐ |

**Curfew**  Weekdays            Weekend

nted 3/11/2016 1:42:32 PM

# Jefferson County Juvenile Detention Center
## Booking Information

| Last Name | First Name | MI | SSN | DOB | Age | Sex | Race |
|---|---|---|---|---|---|---|---|
| H | T | | | | 14 | M | B |

| JJCNum | | BookingTime | 1:42 PM | BookingDate | 3/11/2016 |
|---|---|---|---|---|---|
| Committed By | CO | | Room | C08 | |

**Room Restriction Date:** 3/12/2016   **Time:** 6:00 PM   Booking Officer T,ADAMS

## CLASSIFICATION

Currently taking medication?   Y

**Medications**

| | |
|---|---|
| Suicidal? | N |
| Drug/Alcohol? | N |
| Dangerous? | N |
| Other Problems? | N |
| Comments | N |

| | |
|---|---|
| Any medical problems? | N |
| Comments | N |

Can do PT?

| | | | |
|---|---|---|---|
| Recent hospitalization? | Y | Ever been in protective custody? | Y |
| Recent doctor visit? | N | Recent head injury? | N |
| Recent psychiatrist visit? | Y | Current major dental problems? | N |
| Ever been in mental hospital? | N | Recently taken medicine or drugs? | Y |
| Allergies? | Y | | |

Comments   FISH

| | | | |
|---|---|---|---|
| Fainting spells? | N | | |
| Epilepsy? | N | Diabetes? | N |
| Special diet? | N | Hepatitis? | N |
| Currently sick? | N | Homosexual? | N |
| Currently Injured? | N | Asthma or breathing problems? | N |
| Any disability? | N | Heart problems? | N |
| Ever had HIV test? | N | Stomach problems? | N |
| Have HIV or other STD? | N | Use contact lens? | N |
| Ever had TB test? | N | Any eye problems? | N |
| Have history of TB? | N | Any enemies in this facility? | N |

T   H

ny, March 11, 2016

## Jefferson County Juvenile Detention Center
### Personal Effects Inventory Report

**Name:** H.          . T.

**JJCNum:**

**Booking Time:** 1:42 PM    **Booking Date:**    3/11/2016

**Booking Officer:** T,ADAMS

**Room:** C08

| Item | Item | Description |
|------|------|-------------|
| 5E+0 | SHOES | BLACK NIKE |
| 5E+0 | SOCKS | BLACK |
| 5E+0 | SHORTS | NAVY SHORTS |
| 5E+0 | BOXERS | GREEN |
| 5E+0 | SHIRT | BLACK |
| 5E+0 | HOODIE | BLUE |

I hearby swear that the above information is true and correct.

Inmate signature:

Witnessed by: _____

Friday, March 11, 2016

Page 1 of 1

# Jefferson County Juvenile Detention Center
## Approved Visitors Report

**Name:** H_____ , T'_____

**JJCNum:** _____

**Booking Time:** 1:42 PM     **Booking Date:** 3/11/2016

**Booking Officer:** T,ADAMS     **Room:** C08

| Name | Address | Relation | Phone | Comments |
|---|---|---|---|---|
| DHS | 21815 INT 30 PINE BLUFF     AR   71601 | GUARDIAN | | |

I hearby swear that the above information is true and correct and I understand that the person(s) listed above are the only people allowed to visit me while I am in this facility.

nmate signature: _____

Vitnessed by: _____

'idav. March 11, 2016

# JEFFERSON COUNTY JUVENILE JUSTICE CENTER
## DETENTION CENTER

(CHECK-OUT SHEET)

3/14/16
_____
DATE

**NAME:** L_____ H_____ _____

**TRANSPORTED BY:**

_____ SHERIFF'S OFFICE _Jefferson_ COUNTY
_____ POLICE DEPARTMENT
_____ JCJJC OFFICER
_____ OTHER_____

**FOR:**

____✓____ COURT APPEARANCE
_____ CID INTERVIEW
_____ DOCTOR'S VISIT/HEALTH CLINIC
_____ TRANSFER TO ANOTHER FACILITY
_____ OTHER_____

_____
TRANSPORT OFFICER'S SIGNATURE

_W. Matthews_____
DETENTION OFFICER'S SIGNATURE

_2:00 pm_____
TIMER OUT OF CENTER

_____
TIME BACK INTO CENTER

# JACK JONES/JEFFERSON COUNTY JUVENILE DETENTION CENTER

## Resident's Rules and Information

**All residents will be required to follow the rules that are listed below.  You are to follow the directions of all juvenile detention staff.  Please read these rules and ask questions if you do not understand.**

1. Gang signs are not allowed.  Do not discuss, draw or write anything anywhere that is gang related.

2. Do not touch any equipment or instruments in this center unless you are directed by staff.

3. Possession of tobacco products, cigarette lighters, drugs and drug paraphernalia will result in immediate room restriction and could result in additional charges being filed against you.

4. Do not write on walls, floors, tables or any other structure in the center.

5. No profanity (cursing) or disrespectful language will be allowed.

6. Supplies that are issued to you by a detention officer are the only items allowed in your cell.

7. You are responsible for making your bed and keeping a neat and clean room.

8. When you are given a command, you are to respond immediately.  Failure to respond will result in room restriction time.

9. No physical contact or horseplay, such as boxing or wrestling, is allowed.  No fighting.

10. Do not discuss your charge with other residents or the detention staff.

11. You must get permission from an officer before you can move from one area to another.

12. You may be limited to one phone call (three minute limit) daily.  All other phone privileges are at the discretion of the supervisor.

13. Your incoming mail will be checked for contraband.  Outgoing mail must not be sealed.

14. Any attempt to fake a medical condition requiring action on the part of Center employees will result in expenses incurred being billed to you or your guardian.  You may also be placed on room restriction.

15. You will not be allowed to wear hair-pieces, hair extensions, fake nails or piercings of any kind.

**I have read the above rules, or had them read to me by detention staff.  I agree to do my best to follow the rules of the Jefferson County Juvenile Detention Center.**

Phone Call Allowed _____

Officer's Initials _____     Signature _____     _____  Date

# JACK JONES/JEFFERSON COUNTY JUVENILE JUSTICE CENTER
## DETENTION CENTER OFFENSE/INCIDENT REPORT

| T     H |                               |
|---------|-------------------------------|
| Inmate's Name | Inmate's I.D. Number/SS# |

| | |
|-----|-----|
| Inmate's Name | Inmate's I.D. Number/SS# |

| 03/17/2016 | | |
|------------|------|------|
| Date of Incident | Location of Incident | Time of Incident |

## RULES VIOLATED
**(Check all that apply)**

| | | | |
|---|---|---|---|
| 1. Destruction of Property | | 7. Abusing a Privilege | |
| 2. Creating a Disturbance | | 8. Disorderly Conduct | |
| 3. Fighting | | 9. Escape/Attempted | |
| 4. Threatening/Harming Officer | | 10. Possession of Contraband | |
| 5. Refusing to Obey Order | | 11. Sexual Misconduct | |
| 6. Disrespect | | | |
| | | 12. FYI | XX |

**Narrative:**

On 03/09/2016, I Capt. Smithwick was given an order for D   M      in reference to transporting him from Rivendell Treatment Center, to JJC, for a meeting pertaining to a trial that was to take place on 03/14/2016 at 4:00 p.m. At approx. 2:30 p.m. that evening, 10-15 M     had arrived. Shortly after arrival this juvenile was booked in.

On March 11, 2016 Officer Toney transported one juvenile to Division of Youth Service, and one juvenile to Rivendell Treatment Center. Officer Toney also had an order that was sent By Sgt. Rowland to transport juvenile T    H   for court to be held on Monday 03/14/2016. Officer Toney held the order up to show it to me. He then informed me that D, M.   and T, H   should be kelp apart from each other. At this time I did not read the order in full.

Juvenile T. H   was picked up from Second Chance Ranch and booked in at approx. 1:42 p.m. During this time, I did not read the Court Order fully, due to the fact that I had spoken to Sgt. Rowland who informed me that this juvenile was being held for the weekend for a trial on March 14,2016.

**Action Taken:**

| | |
|---|---|

| | |
|---|---|
| Reporting Officer's Name | Supervisor Reviewing Incident-Name |

| | |
|---|---|
| Reporting Officer's Signature | Supervisor Reviewing Incident-Signature |

JJ/JCJDC Incident Report Form
3/17/16 4:19 PM
Page 1 of 2

INTERROGATORY #
(DOCUMENT)  22, 23, 24
& 25

# JACK JONES/JEFFERSON COUNTY JUVENILE JUSTICE CENTER
## DETENTION CENTER OFFENSE/INCIDENT REPORT

| | |
|---|---|
| T▓ ▓ H▓ | |
| Inmate's Name | Inmate's I.D. Number/SS# |
| Inmate's Name | Inmate's I.D. Number/SS# |

| | | |
|---|---|---|
| March 17, 2016 | | Approx. |
| Date of Incident | Location of Incident | Time of Incident |

## RULES VIOLATED
(Check all that apply)

| | | | | |
|---|---|---|---|---|
| 1. Destruction of Property | | 7. Abusing a Privilege | | |
| 2. Creating a Disturbance | | 8. Disorderly Conduct | | |
| 3. Fighting | | 9. Escape/Attempted | | |
| 4. Threatening/Harming Officer | | 10. Possession of Contraband | | |
| 5. Refusing to Obey Order | | 11. Sexual Misconduct | | |
| 6. Disrespect | | 12. FYI | | XX |

**Narrative:**

On the above date and approx. time I Officer RC Toney I was informed by Capt Smithwick to pick up T▓ ▓ H▓ ▓. After being informed by Capt Smithwick, I looked in my box to check for a transport order. There was an order to products this juvenile dated for Monday 03/14/2016, however Capt. Smithwick informed me to pick him up on Friday, and bring him to JJC. Shortly after, I received a call from Sgt. Rolland JCSO stating, had I been inform about picking up T▓ ▓ H▓ ▓ to which I responded yes. Sgt Rowland then stated that she would contact the prosecuting attorney Ms. Manning to advise her that the juvenile would be held at JJC over the weekend. On Friday March 11, 2016 I informed Sgt. Rowland that I picked up this juvenile, and he was here at JJC. She then stated that she would contact Ms. Manning and inform her that this juvenile was at JJC.

**Action Taken:**

| | |
|---|---|
| Reporting Officer's Name | Supervisor Reviewing Incident-Name |
| Reporting Officer's Signature | Supervisor Reviewing Incident-Signature |
| | Approved for Room Restriction-Name |
| | Approved For Room Restriction-Signature |
| | Juvenile Officer II, III |
| | Chief Juvenile Officer |

# JACK JONES/JEFFERSON COUNTY JUVENILE JUSTICE CENTER
## DETENTION CENTER OFFENSE/INCIDENT REPORT

| T          H | |
|---|---|
| Inmate's Name | |
| | Inmate's I.D. Number/SS# |
| Inmate's Name | |
| | Inmate's I.D. Number/SS# |

| 03/17/2016 | | |
|---|---|---|
| Date of Incident | Location of Incident | Time of Incident |

### RULES VIOLATED
**(Check all that apply)**

| | | |
|---|---|---|
| 1. Destruction of Property | 7. Abusing a Privilege | |
| 2. Creating a Disturbance | 8. Disorderly Conduct | |
| 3. Fighting | 9. Escape/Attempted | |
| 4. Threatening/Harming Officer | 10. Possession of Contraband | |
| 5. Refusing to Obey Order | 11. Sexual Misconduct | |
| 6. Disrespect | 12. FYI | XX |

**Narrative:**

On 03/11/2016, I was briefed about a juvenile that was coming in route to JJC in reference to a trial that would take place on 03/14/2016. At approx. 1:20 pm the juvenile that was spoken about (which was T          H  ) arrived. Prior to the arrival of this juvenile we were give order that under no circumstances are juveniles T, H and D. M         to communicate which each other. Shortly after arriving, these two juvenile attempted to communicate with each other. Seeing the, I moved T. H  in front of the control tower. This method did not work because the two juveniles were still attempting to communicate with each other. Seeing that we could not prevent the two juvenile from communicating, due to the fact that 10-15 D. M        was being housed in holding cell 01, I began to book this juvenile in. Shortly after booking this juvenile in, Persecuting Attorney C. Manning was on site to interview juvenile T, H   During this process Mrs. A. Ortizs of DHS arrived to check on this juvenile and questioning why was this juvenile being detain. I stated that he is here for court on Monday. It was at this time where Sgt. Rice fully read the order. This order stated that this juvenile is to be in court on 03/14/2016.  Mrs. Ortizs proceed to the area where the juvenile was being interview. While in the room Mrs. Ortizs was talking to the attorney trying to convents Ms. Manning to let her assume responsibility of getting this juvenile to court, to no avail. At this time Mrs. Ortizs came over to me and stated that Ms. Manning was being rude and refuse to corporate, and that she insisted that he stay here.

**Action Taken:**

| | |
|---|---|
| Reporting Officer's Name | Supervisor Reviewing Incident-Name |

# JACK JONES/JEFFERSON COUNTY JUVENILE JUSTICE CENTER
## DETENTION CENTER OFFENSE/INCIDENT REPORT

| T.       ᵈ | |
|---|---|
| Inmate's Name | Inmate's I.D. Number/SS# |
| Inmate's Name | Inmate's I.D. Number/SS# |
| Inmate's Name | Inmate's I.D. Number/SS# |
| Inmate's Name | Inmate's I.D. Number/SS# |

| March 17, 2016 | | Approx. |
|---|---|---|
| Date of Incident | Location of Incident | Time of Incident |

## RULES VIOLATED
(Check all that apply)

| 1. Destruction of Property | | 7. Abusing a Privilege | |
|---|---|---|---|
| 2. Creating a Disturbance | | 8. Disorderly Conduct | |
| 3. Fighting | | 9. Escape/Attempted | |
| 4. Threatening/Harming Officer | | 10. Possession of Contraband | |
| 5. Refusing to Obey Order | | 11. Sexual Misconduct | |
| 6. Disrespect | | 12. Other   (Information) | xx |

**Narrative:**

On March 11, 2016, This Sgt. was informed by Capt Smithwick that RC Tonev would be transporting T          H    to JJC to be detained and to separate D. M        from him. Cpl. Adams had booked in T. H        and we both read the order and noticed that the order said for T. H        to go to court on March 14-15, 2016. I informed Capt. Smithwick about the order. Cpl. Adams talked to Attorney Manning about the order and also Ms. Ortiz (DHS) and the Attorney said T. H        could stay in detention until Monday, March 14, 2016 and Ms. Ortiz was trying to get T. H        released on the above date.

**Action Taken:**

I have documentation on my shift change report when Attorney Manning and Ms. Ortiz visited JJC to speak with T. H        and D. M

| Sgt. L. Rice | |
|---|---|
| Reporting Officer's Name | Supervisor Reviewing Incident-Name |

*Sgt. L. Rice*

| Reporting Officer's Signature | Supervisor Reviewing Incident-Signature |
|---|---|
| | Approved for Room Restriction-Name |

JJ/JCJDC Incident Report Form
3/17/16 3:44 PM
Page 1 of 2

# JACK JONES JEFFERSON COUNTY JUVENILE JUSTICE
## DETENTION CENTER SHIFT CHANGE REPORT

| Supervisor: Sgt. L. Rice | Date: 03/11/2016 | | Time: 0600-1800 |
|---|---|---|---|
| Total Number of Residents Per Head Count:**63** | A-Pod: 13 | B-Pod: 13 | Total Number of Residents Per Roster Log:**63** |
| | C-Pod: 17 | D-Pod: 16 | |
| | Intake: 04 | Holding: 00 | |

Shift Change Briefed By: Sgt. G. Wilburn.

Deputy Jones on Leave. Cpl. Adams & Deputy Harrison on Duty. All Appear Secure. Count @ 63

- ➢ Radio Checked 10-2 @ 6:00AM
- ➢ Pill Call Conducted by Nurse Randle
- ➢ Released N. Hughes & A. Galvez to DYS per RS9 Status Change
- ➢ A. Stokes & J. Brown upfront w/Mr. E. Walden (Staffing)
- ➢ Ofc. G. Harden on Duty @ 12:00PM
- ➢ Radio Check 10-2 @ 12:00PM
- ➢ Mr. Fikes visits w/ female juveniles (Bible Studies)
- ➢ Released J. Wyatt to DYS per RS9 Status Change
- ➢ Released J. Cole to Rivendell PCO
- ➢ Booked in T. Howe (C08) & S. Williams (C09)
- ➢ Atty. Manning & DHS visits w/T. H
- ➢ Ms. Westfall (CASA) visits w/D. M
- ➢ Mr. Mooney (Pat Ctr.) visits w/C. Alexander
- ➢ C-POD Cleaning Complete

| Ending Number of Residents Per Head Count: **61** | A-Pod : 12 | B-Pod: 13 | Ending Number of Residents Per Roster Log: **61** |
|---|---|---|---|
| | C-Pod : 18 | D-Pod: 15 | |
| | Intake: 03 | Holding: 00 | |

**Facility Damage Report:**

| D A M A G E S | Cell Block-A: Rm. # 2 | Cell Block-B: Rm. # | Cell Block-C: Rm. # | Cell Block-D: Rm. # |
|---|---|---|---|---|
| | . | | | |
| | . | | | |
| | . | | | |
| | Showers: | | | |
| | | Visiting Rooms: | Sally Port: | |
| | | | | Holding Cells: |

# JACK JONES JEFFERSON COUNTY JUVENILE JUSTICE
## DETENTION CENTER SHIFT CHANGE REPORT

| Supervisor: Sgt. L. Rice | Date: 03/13/2016 | | Time: 0600-1800 |
|---|---|---|---|
| **Total Number of Residents** Per Head Count: **64** | A-Pod: 12 | B-Pod: 14 | **Total Number of Residents** Per Roster Log: **64** |
| | C-Pod: 19 | D-Pod: 16 | |
| | Intake: 03 | Holding: 00 | |

**Shift Change Briefed By: Sgt. K. Thomason.**

Deputy Jones on Leave. Cpl. Adams & Deputy Harrison on Duty. All Appear Secure. Count @ 64

- ➢ Radio Checked 10-2 @ 6:00AM
- ➢ Pill Call Conducted by Sgt. L. Rice
- ➢ All PODS received Recreation
- ➢ Booked in D. Marks (C11) & L. Bealer (C11)
- ➢ Deputy T. Marshall on Duty @ 2:00PM-4:00PM
- ➢ Radio Check 10-2 @ 12:00PM
- ➢ Visitation Conducted by Cpl. T. Adams
- ➢ Atty. Manning visits w/juveniles T. H.      & D. M.
- ➢ Ofc. T. Calhoun on Duty @ 4:20PM
- ➢ Booked in I. Richardson (A11)
- ➢ No Releases
- ➢ Swept and mopped all tile floors

| **Ending Number of Residents** Per Head Count: **67** | A-Pod : 13 | B-Pod: 14 | **Ending Number of Residents** Per Roster Log: **67** |
|---|---|---|---|
| | C-Pod: 21 | D-Pod: 16 | |
| | Intake: 03 | Holding: 00 | |

**Facility Damage Report:**

| D A M A G E S | Cell Block-A: Rm. # 2 | Cell Block-B: Rm. # | Cell Block-C: Rm. # | Cell Block-D: Rm. # |
|---|---|---|---|---|
| | ▪ | | | |
| | ▪ | | | |
| | ▪ | | | |
| | Showers: | Visiting Rooms: | Sally Port: | Holding Cells: |
| | | | | |
| | | | | |

# Jefferson County Sheriff's Office

## JJC POLICY & PROCEDURE



**GERALD ROBINSON**
**JEFFERSON COUNTY SHERIFF**
**REVISED AUGUST 2011**

## Jefferson County Juvenile Justice Center
## POLICIES AND PROCEDURES

Chapter:   Security and Control       Policy Number 6-1014
Subject:  Vehicle Security - Transportation

## POLICY

To ensure the security and safety of juveniles during transfers, proper safeguards shall be used at all times by the transporting officer.

## PROCEDURES

The following rules apply when transporting juveniles outside the facility in official vehicles.

- Employees that drive county vehicles must have a valid driver's license that shall be verified annually by the facility administrator or his designee.

- The driver and passenger must use seat belts when operating a county vehicle.

- The employee shall call the police department and if applicable, an ambulance, if an accident occurs while operating a county vehicle.

- Employees that are involved in an accident must obtain the names of witnesses and notify the shift supervisor at J.C.J.J.C. An incident report must be submitted to the administrator or assistant administrator as soon as possible.

44

- To prevent escapes and to ensure the safety of the transporting officer, all juveniles being transported **shall be secured with hand and leg restraints**. The officer shall double lock the restraints.

- Officers are to ensure that restraints are secured so they cannot be slipped off by juveniles.

- The transporting officer is required to contact the shift supervisor and inform him of any delays or problems that occur during the time they are away from the facility.

- Juveniles being transported must wear J.C.J.J.C. issued clothing. All exceptions to this rule must have approval of the shift supervisor, or administrator.

## PROCEDURES FOR TRANSPORTING JUVENILE'S MEDICATION AND PERSONAL PROPERTY:

1. Medical staff will maintain a log on each resident that is taking medication prescribed by a physician. This log will indicate the name of the medication, pill count, dosage, and the amount of meds at the time of transport.

2. Prior to transport, detention staff will ensure that medication is in its original container and sealed in a property envelop bag.

   Note:    When transporting DYS residents, a medication transfer form must be completed and placed inside the sealed envelop (see attached).

3. Under no circumstances will any medication be in the possession of a resident at any time during the transport.

4. **Personal property** will be inventoried before the transport and validated by signature of the client and detention staff. A copy of the signed inventory form will be placed in an envelop along with the resident's personal property

45

## JEFFERSON COUNTY SHERIFF'S OFFICE

**TITLE:** 3

**SECTION:** 2

**STANDARD OF CONDUCT / DISCIPLINE**

3. Standard of Conduct / Discipline

A. The Sheriff's Office has established reasonable rules of conduct and performance. There is rarely need for severe discipline. Disciplinary action will only be taken after complete consideration has been given to the facts in the case and the best course of action has been decided. Your supervisor will acquaint you with the rules and policies and the importance of compliance. You will be made aware of any changes, which may occur with respect to these rules. These are

recognize our continuing responsibility to develop and administer the necessary regulations and disciplinary measures in a fair and consistent manner. It is the responsibility of all employees working in this department to conform to those rules and regulations.

Whenever an employee violates one or more of the rules of conduct warranting disciplinary action, such action may be taken as listed below, depending on the seriousness of the offense committed and past infractions.

1) A verbal warning will be issued to the employee, but no formal notification will be made in the employee's personnel file for a first offense.

2) A written warning will be issued to the employee committing a second offense and a copy of the written warning, signed by the employee and his supervisor will be placed in the employee's personnel file.

3) A suspension from work without pay for a period not to exceed thirty (30) days may be issued to the employee committing the offense, and such fact will be officially noted in the employee's personnel file.

4) A termination of the employee may occur due to the nature of the offense or as a result of the receipt of other disciplinary actions indicating a continuing disregard for the rules and regulations of this department.

D. All disciplinary actions taken are subject to the grievance procedure as hereinafter set forth.

E. There are certain rules and regulations that are so inherently necessary in public service that common sense and good judgment would require that infractions thereof may be sufficient grounds for **termination** or suspension without giving notice or warning. Your cooperation in observing the following rules and regulations is required.

1) Fraud in securing employment.

2) Insubordination.

3) Inefficiency.

Dishonesty.

Discourteous treatment of the public.

Disclosure of confidential information.

Knowingly engaging in employment or other activities, which create a conflict of interest. The acceptance of anything of value for the purpose of influencing official conduct or decisions.

9) Willfully abusing, damaging, or defacing county property.

10) Utilizing county property for other than officially approved activities.

11) Excessive absenteeism or tardiness.

12) Falsifying records or other official documents.

13) Misuse of sick leave benefits.

14) Possession or use of alcoholic beverages or illegal narcotics or being under their influence during working hours is prohibited, unless performed in the line of duty.

15) Violation of Speech Policy.

**JEFFERSON COUNTY SHERIFF'S OFFICE**

**TITLE:** 3

**SECTION:** 3

**GRIEVANCE PROCEDURE**

3. Grievance Procedure

A. When an employee feels that they have been treated unfairly or arbitrarily in breach of the sheriff's office personnel policies and procedures, the employee shall follow the procedures as outlined below.

Discuss the grievance with your immediate supervisor (just prior to entering your grievance) grievances **must** be documented (use the form provided)

2. Discuss the grievance with your division commander.

3. Discuss the grievance with the chief deputy.

4. If the grievance is not resolved by the chief deputy, the employee should present the grievance to the Sheriff, whose action shall be final.

Disciplinary Appeal Process

Should an employee feel that he/she has been disciplined unfairly or arbitrarily an appeal to the sheriff may be filed. The appeal must:

1) Set forth in plain language the basis for the appeal.

2) Be filed within 10 calendar days of the disciplinary notice.

3) Request a hearing before the sheriff if desired.

4) Give notice to the sheriff if you plan to be represented by counsel at a hearing (no other parties may be present with the exception of your attorney).

The sheriff will generally notify you in writing of his decision within 10 days. The sheriff may also order further investigation into your matter.

# JEFFERSON COUNTY SHERIFF'S OFFICE

**TITLE:** 3

**SECTION:** 4

**RECORDS OF DISCIPLINARY ACTIONS**

3. Records of Disciplinary Actions

A. Effective June 200_ the department will retain copies of all disciplinary records as a permanent part of an employee's personnel file.

According to _____ employee handbook, the department generally follows a progressive discipline _____ with counseling by your immediate _____ verbal warning. These will not be _____ file where an employee has progressed to any of the following steps

Written warning/reprimand

Suspension/probation

Termination, and

_____ internal investigation _____ disciplinary action in any of the three _____ categories is _____ inquiry will more than likely be made with supervisors concerning any previous verbal warnings and counseling.



# Jefferson County Juvenile Justice Center

## POLICIES AND PROCEDURES

Chapter:   Admission and Intake        Policy Number: 9-1001

Subject: Admission Procedures

## POLICY

The admission and orientation process shall be conducted immediately following the arrival of a juvenile to the facility. No juvenile will be admitted to the detention center unless that juvenile meets the criteria for detention as authorized by the Arkansas Juvenile Code or is under eighteen (18) and charged as an adult.[1]

## PROCEDURES

### Documentation - Authorization

Detention staff must have a valid court order or charging instrument (ticket, criminal summons, contempt order, warrant) prior to accepting a juvenile for admission.

The detention officer must verify the juvenile's age.   The juvenile must be at least ten (10) years of age and less than eighteen (18) years of age (10-17 years).   The shift supervisor should not book in the juvenile until the age of the juvenile is verified.

---

[1]   ACA 9-27-313        Taking Into Custody
      ACA 9-27-322        Release from Custody
      ACA 9-27-330(11)    90 Day Sentences
      ACA 9-27-336        Limitations on Detentions

1

After verifying the juvenile's age, the shift supervisor shall contact the intake officer to obtain authorization to detain.[2] This contact must be made with the intake officer for the county in which the charge or court order originated.

The intake officer's authorization to detain a juvenile should be in written form. After regular business hours a shift supervisor may elect to accept a verbal authorization to detain when communicated via radio or telephone. The "detention authorization form" must be executed and signed "authorized by phone or radio".

The intake officer has twenty-four (24) hours from the time the juvenile is taken into custody to make a detention decision. Only the intake officer (not law enforcement personnel) has the discretion to release or detain a juvenile once he is brought to the facility.

## Run-A-Ways (FINS)

When a juvenile has been absent from his/her home for more than an twenty-four (24) hours, the juvenile may be held in custody in a juvenile detention facility for the purpose of identification, or to arrange for release or transfer to another agency. The juvenile may be held for up to twenty-four (24) hours if his parents or guardians lives out of state or beyond a fifty (50) mile radius of the facility. Otherwise, the juvenile can only be held for up to six (6) hours. See ACA 9-27-313(e)(2).

---

[2] ACA 9-27-313(2)(A)(i) The intake officer shall be notified immediately to make a detention decision pursuant to 9-27-322 within twenty-four (24) hours of the time the juvenile was first taken into custody, and the prosecuting attorney shall be notified within twenty-four (24) hours.

When a run-a-way is brought in, the intake officer must be contacted. It is the responsibility of the intake officer to arrange for the release or transfer of the juvenile. See ACA 9-27-313(d)(5).

**Run-a-ways shall be separated (placed in a holding cell) from detained juveniles charged or being held for delinquency.** Unless the run-a-way has been arrested for a criminal offense.

## Book-In Process

All juveniles that are brought to the facility on criminal charges, FINS, or court orders shall be entered into the booking computer and a file folder prepared. This includes juveniles that are brought in to be released to their parents or guardian.

During the book-in process the detention officer shall enter in the computer the juveniles' personal data, medical history, clothing inventory, room assignment, visitation information, and any other pertinent data.

The orientation process shall begin as soon as the juvenile arrives and continue throughout the book-in process. The admitting officer shall treat the juvenile in a pleasant and courteous manner, explaining each step of the admission procedure. During the book-in process the juvenile will be given a copy of the "Resident's Rules". After reading these rules the juvenile will sign where indicated and the form will be placed in his/her file. Should the juvenile refuse to sign, he/she will be placed on room restriction. "Refused to sign" will be entered in the juvenile's signature space.

After completing the book-in process, a hard copy of the juvenile's personal, visitation, medical, classification, and inventory data shall be generated from the computer and placed in the juvenile's file. Legal documents shall be filed on the left side of the file folder, J.C.J.J.C. documents shall be filed on the right side.

All juveniles being held in custody at J.C.J.J.C. **shall** be allowed to make a telephone call to his/her parent, guardian, or attorney. The juvenile officer shall document this on the "Resident Rules" form where indicated. The phone call can be made during the booking process or when the juvenile winds down and becomes cooperative.

The intake officer has a legal duty to call the parents and inform them of the charges against the juvenile.

## Showering Process

After the book-in process, the juvenile will be escorted to the shower-room, strip-searched, and showered. The shower shall be conducted by an **officer of the same gender**. Showers shall be given only to juveniles that will be held for more than one day.

For sanitary purposes, the juveniles' head, underarms, and private area shall be sprayed with delouse chemical prior to taking his/her shower. To be effective, this spray must remain on the juvenile for at least ten (10) minutes before being washed-off.

Before showering, the juvenile should be issued the following toiletry articles:

- wash cloth
- bath towel
- soap

4

- comb
- underwear
- jumpsuit
- socks
- shoes

After showering, the juvenile should receive the following:

- two blankets
- toothbrush - with handle shortened
- feminine hygiene products, when necessary

The book-in officer will then escort the juvenile to his/her assigned cell. As part of the orientation process, the juvenile will be told that he/she will be on twenty-four (24) hours room-restriction.

Juveniles that present suicidal tendencies or aggressiveness, **shall** be placed in a holding cell for intensive monitoring. The captain or shift supervisor will determine when these juveniles should be assigned to a regular cell. Juveniles placed in the holding cell will be monitored via video cameras in the control tower.

## JEFFERSON COUNTY SHERIFF'S OFFICE

**TITLE:** 3

**SECTION:** 17

**PROCEDURES FOR JUVENILE OFFENDERS**

3.17   Procedures for Juvenile Offenders



### I. POLICY

The arrest or detention of juveniles shall be in compliance with the Arkansas Juvenile Code, orders from the Juvenile Court, and in accordance with other applicable statutory laws concerning arrest and detention.

### II. PURPOSE

To provide guidelines for deputies who take juveniles into custody for various offenses or for other protective measures.

### III. PROCEDURES

The following guidelines are set forth to direct deputies in the field on how to proceed and resolve matters pertaining to juveniles.

A. **TRAFFIC VIOLATIONS, OFFENDER UNDER 18, OFFENDER RELEASED**

1) Issue uniform traffic citation. Parents must appear in court according to the municipal court's policy and according to Arkansas law. See ACA 9-27-313 below:

"Pursuant to the Arkansas Rules of Criminal Procedure, issue a citation for the juvenile and his parents to appear for a first appearance before the juvenile court and release the juvenile and, within twenty-four (24) hours, notify the juvenile intake officer and the prosecuting attorney so that a petition may be filed under this subchapter."

Notice the code says that a first appearance in juvenile court. Our jurisdiction applies this being a municipal court also in that all traffic issues are handled by this court. When you are making a criminal charge, the juvenile court must be notified, otherwise, for a traffic case the ticket must simply be turned into the municipal court.

2) Issue written warning and release.

_____ of this department provides for notice of the warning _____ communicated to parents where the deputy or the department deems _____ This _____ appears on the warning citation.

**B. JUVENILE RUNAWAYS -UNDER 18**

1) Confirm the status of the juvenile through ACIC/NCIC and juvenile pick-up order. Pick-up order on file with MECA and with the Juvenile Justice Center.

2) If confirmation is made take the juvenile into custody and transport him/her to the juvenile Justice _____. If there is no confirmation, release the juvenile to his parents provided there is no danger to him. If the juvenile is not to be detained as a run-a-way and parents cannot be located, call DHS. A deputy may take a juvenile into protective custody if there are clear, _____ grounds to conclude that the juvenile is in immediate danger and that removal is necessary to prevent serious harm from his surroundings or from illness or injury and if parents, guardians, or others with authority to act are available or have not taken action necessary to protect the juvenile from the danger and there is no time to petition for an obtain an order of the court prior to taking the juvenile into custody. The court staff, or the detention center shall then notify parents or guardians and arrange for the return of the juvenile or take other appropriate action. This allows deputies to return to their regular duties. See section _____ for information about what is required to happen and is being made part of this policy for _____ information.

ACA 9-27-313

"In cases when the parent, guardian, or other person contacted lives beyond a fifty (50) mile driving distance or out-of-state and the juvenile has been absent from his home or domicile for more than twenty-four (24) hours, the juvenile may be held in custody in a juvenile

*detention facility for purposes of identification, processing, or arranging for release or transfer to an alternative facility. Such holding shall be limited to the minimum time necessary to complete these actions and shall not occur in any facility utilized for incarceration of adults. A juvenile held under this subdivision must be separated from detained juveniles charged or held pursuant to a juvenile. A juvenile may not be held under this subdivision for more than six (6) hours if the parent, guardian, or other person contacted lives in the state, or twenty-four (24) hours excluding weekends and holidays if the parent, guardian, or other person contacted lives out of state;*

3) Deputies are required to gather enough pertinent data to delete the juvenile from the computer system if the initial entry was made from our jurisdiction.

Otherwise, contact the originating jurisdiction releases to person to the jurisdiction who

4) Deputies are required to complete a brief incident report, which includes the circumstances leading to protective custody and the proper notice requirements that follow.

Assist the court staff or detention staff as needed.

## C. ARREST PROCEDURES FOR CRIMINAL VIOLATION UNDER 18

1) All criminal violations will be handled by the Juvenile Court, unless the prosecutor later files on the juvenile as an adult. Should criminal charges are filed the case is transferred to Circuit Court, and the defendant, if detained, is transferred to the county jail.

2) Deputies simply advise arrestees they are under arrest and ask them no questions. Miranda would not apply for adults. However, our Juvenile Code requires the arresting officer to advise juveniles at the time of the arrest even where no questions are asked. See A.C.A. 9-27-316(a)(1) below:

*"In delinquency and families in need of services cases, a juvenile and his parent, guardian, or custodian shall be advised by the law enforcement official taking a juvenile into custody, by the intake or enforcement official at the probable cause interview, and by the court at the juvenile's first appearance before the court, that the juvenile has the right to be represented at all stages of the proceedings by counsel."* (Juveniles, in effect, receive the Miranda warnings three times.)

3) Issue the juvenile a criminal citation for the offense. By operation of law parents are required to attend all proceedings with the juvenile in juvenile court. A criminal citation

Title 3, Section 17

Procedures For Juvenile Offenders

may be issued to the juvenile and the deputy _may release_ if the offense is a _misdemeanor_. The prosecutor can approve the issuance of a criminal citation and the release if the offense is a _felony_. This is consistent with ARCrP 5.2.

Uses of citations are encouraged in circumstances where issuance of a citation is consistent with the effective enforcement of the law. Accordingly, a deputy having grounds for making an arrest should take the accused into custody or, already having done so, detain him further only when such action is required by the need to carry out legitimate investigative functions, to protect the accused or others where his continued liberty would constitute a risk of immediate harm, or where there are reasonable grounds to believe that the accused will fail to respond to a citation. Jail space is at a premium in this community.

[illegible] there are certain instances where a juvenile should be detained or made on [illegible]. See ACA 9-27-313 below. Notice in the wording the [illegible] [illegible] does not have any discretion in these cases, _detention is mandatory_.

(d)(I)(A) If juvenile is taken into custody for:

(i) Unlawful possession of a handgun, 5-73-119(a)(1); or

(ii) Possession of a handgun on school property, 5-73-119(c)(1)(A)

(iii) Unlawful discharge of a firearm from a vehicle 5-74-107; or

(iv) Any felony committed while armed with a firearm; or

(v) Criminal use of a prohibited weapon, the juvenile, the law enforcement officer shall take the juvenile into detention and shall notify the juvenile court intake officer and the prosecuting attorney within twenty four (24) hours so that a petition may be filed.

(B) The authority of a juvenile intake officer to make a detention determination pursuant to 9-27-313 shall not apply when a juvenile is detained pursuant to this subdivision (d)(I).

(C) A detention hearing shall be held by the court pursuant to 9-27-326 within seventy-two (72) hours after the juvenile is taken into custody or} if the seventy-two (72) hours ends on a Saturday} Sunday} or holiday} on the next business day.

D. **ARREST/SUMMONS FOR CRIMINAL VIOLATIONS/UNDER 18**

1) In some instances juveniles may have absented themselves from a crime scene but enough information (probable cause) is later developed to identify them as the perpetrators. Because juveniles commit many offenses that are not considered serious, the use of a criminal summons may save the department time and money. If a warrant must be served, this may take a enormous amount of time along with the booking process. Whereas a summons may be mailed by certified mail to the juvenile and his parents, consider the use of a criminal summons as a tool where appropriate.

2) An officer may issue an arrest warrant or issue a criminal summons. If the complaint has not been reduced, must first consult with the judge seeking an arrest warrant.

The court clerk can issue a summons upon the filing of an affidavit sworn by the complaining party and approved and endorsed by the prosecuting attorney.

Every summons will inform the accused that failure to appear at the stated time, place, and court may result in his arrest and shall constitute a separate offense for which he may be prosecuted. (Failure to appear)

A criminal summons may be personally served or sent by certified mail with a return receipt.

E. **ARRESTS WITH A WARRANT**

1) Advise the juvenile of rights under Miranda, even if there is no interrogation.

2) Take the juvenile to the Juvenile Justice Center or before the court that issued the warrant as soon as possible.

3) Notify the juvenile's parents, custodian, or guardian.

4) If the warrant was entered onto ACIC by the department, have the warrant deleted from the system. If the warrant was entered by another agency send them a terminal message.

5) Complete an incident report if there were any problems with the arrest.

Title 3, Section 17

Procedures For Juvenile Offenders

## F. TAKING JUVENILES INTO PROTECTIVE CUSTODY/FINS/ DEPENDANT/NEGLECT CASES

1) Take the juvenile into protective custody if necessary.

2) Transport juvenile to hospital or Juvenile Justice Center/ Emergency Shelter Care.

3) Notify Department of Human Services. (On-Call Worker)

4) Complete incident report, notify CID if necessary.

5) Photograph, X-ray, video injuries.

6) ...

Contributing to delinquency of a juvenile
Endangering the welfare of a minor
Contributing to the delinquency of a minor
Domestic battery
Incest
Violation of a minor
Sexual solicitation of a child
Sexual abuse
Sexual misconduct
Rape
Permitting abuse of a child
Neglect of minor resulting in delinquency

## F. INTERROGATION OF JUVENILES

Arkansas law at the present time creates a procedural trap for law enforcement. The law in this area has changed several ... the last ten (10) years. Simply put, juveniles have the same constitutional rights as ... adults. Juvenile Code actually ... some of these rights. The question concerning juvenile interrogations is, "can a juvenile knowingly and intelligently waive his Miranda Rights at such a young age, thereby understanding the consequences that may follow?" The Arkansas Supreme Court has said many times that they can waive and have an appreciation for what they are doing.

Here is the procedural trap for law enforcement. If a juvenile is initially charged as an adult (meaning that parents do not have to be consulted or allowed to participate), there is generally no problem with the waiver issue. An adult can waive his rights, give a statement

Revised April 2010

Page 6 of 8

Title 3, Section 17

Procedures For Juvenile Offenders

to a deputy, and no one is required to be present to give him advice or participate in the decision. Suppose the prosecutor later elects to charge the juvenile in Juvenile Court <u>as a juvenile</u>.

When juveniles are tried as juveniles the law is quite different, protections are enhanced as mentioned earlier. A juvenile is entitled to have his parents present and to allow them to counsel him and to participate in his decision as to whether he will waive his rights. Not too long ago the law even required the parents to sign the waiver form, but this law has been changed. Understand, this right is specific to the juvenile.

When a juvenile has been interrogated as if he was an adult and the prosecutor later decides to file in Juvenile Court ... confession given without parental input or advice ... Subsequently ... relating to the statements taken. The statement ... court because parents were not allowed the opportunity ...

The ... now turns to what our department can do to mitigate these problems. ... the policy ... this department:

1) ... execute a special rights form tailored for persons under 18.

... juvenile interrogations are undertaken ... parents are advised and offered the opportunity to participate, then ... to matter what court it is ultimately filed in.

H. <u>DWI ARRESTS - DRUGS / ALCOHOL</u>

Juveniles who operate motor vehicles are to be treated in the same manner as adult drivers. The same reasonable suspicion is required to make the initial stop or detention, the same probable cause is necessary before an arrest can be made. Field sobriety tests and breath tests are the same. Administer the same adult rights form to them also.

The problem with juveniles is the incarceration. State law and jail standards do not permit the incarceration of juvenile offenders in adult jails. There are some narrow exceptions but they do not specifically address juvenile DWI offenders. As persons, juveniles should not be jailed with adults when arrested for DWI. It is the policy of this department to:

1) Notify parents or guardians of the arrest.

2) Issue a citation that also advises the parents they must appear in municipal court with the juvenile.

3) Release the juvenile to their parents or another responsible **adult** family member. The parents are always the first priority.

4) If parents cannot be located the juvenile may be held in the holding cell or lobby at the adult jail.

As an alternative the juvenile may be placed in the observation / holding cell at the Juvenile Justice Center.

If the juvenile are not incarcerated, they are being held in a situation awaiting parents to take charge of the juvenile.

This supersedes and rescinds all previous policy governing this issue.

Gera...nson
She...



IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

STATE OF ARKANSAS

PLAINTIFF

VS.

35CR-2014-436

SAMUEL EVANS

DEFENDANT

ORDER TO DELIVER

THE SHERIFF OF JEFFERSON COUNTY, ARKANSAS:

You are hereby ordered and directed to take custody from the **Jack Jones Juvenile Justice Center, Pine Bluff, AR 71601**, a juvenile delinquent, D       M     , B/M DOB:      .

... who is now confined in said facility and deliver him to Jefferson County Courthouse, 100 West Barraque Street, Pine Bluff, AR 71601, on **Wednesday, March 9th, 2016 at 4:00 p.m.** for purpose of office meeting and on **Monday, March 14, 2016 at 8:30 a.m.**, for the purpose of a criminal jury trial.

The Superintendent/Director of the Jack Jones Juvenile Justice Center, is hereby ordered to have **D    M** , **B/M DOB:**        available for transportation by the Sheriff of Jefferson County Arkansas on the aforementioned dates. That Sheriff of Jefferson County Arkansas is to deliver **D    M** , **B/M DOB:**        to the Jefferson County Courthouse on **Wednesday, March 9th, 2016 at 4:00 p.m.** for purpose of office meeting and on **Monday, March 14, 2016 at 8:30 a.m.**, for the purpose of a criminal jury trial.

The Sheriff of Jefferson County, Arkansas is further ordered to return custody of said juvenile delinquent to the Jack Jones Juvenile Justice Center upon completion of said office meeting and jury trial.

IT IS SO ORDERED this 7th day of March, 2016.

_____
CIRCUIT JUDGE

FILED

MAR - 7 2016

LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS

SUBMITTED BY:

KARRES D. MANNING
DEPUTY PROSECUTING ATTORNEY

- Sheriff (2)
- J.J.C

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

STATE OF ARKANSAS

PLAINTIFF

VS.                                35CR-2014-436

SAMUEL EVANS                                          DEFENDANT

<u>AMENDED ORDER TO DELIVER</u>

THE SHERIFF OF JEFFERSON COUNTY, ARKANSAS:

You are hereby ordered and directed to take custody from the **Rivendell Behavior Health Services of Arkansas, 100 Rivendell Drive, Benton, AR 72015**, a juvenile delinquent,

D'          , **B/M DOB:** (          , who is now confined in said facility and deliver him to Jefferson County Courthouse, 100 West Barraque Street, Pine Bluff, AR 71601, on <u>**Wednesday, March 9th, 2016 at 4:00 p.m.**</u> for purpose of office meeting and on <u>**Monday & Tuesday, March 14 -15th, 2016 at 8:30 a.m.**</u>, for the purpose of a criminal jury trial.

The Superintendent/Director of the Rivendell Behavior Health Services of Arkansas, is hereby ordered to have D'     f     . **B/M DOB:** (          , available for transportation by the Sheriff of Jefferson County Arkansas on the aforementioned dates. That Sheriff of Jefferson County Arkansas is to deliver D     M     **B/M DOB:**

o the Jefferson County Courthouse on <u>**Wednesday, March 9th, 2016 at 4:00 p.m.**</u> for purpose of office meeting and on <u>**Monday & Tuesday, March 14-15th, 2016 at 8:30 a.m.**</u>, for the purpose of a criminal jury trial.

The Sheriff of Jefferson County, Arkansas is further ordered to return custody of said juvenile delinquent to the Rivendell Behavior Health Services of Arkansas upon completion of said office meeting and jury trial.

FILED

IT IS SO ORDERED this 9th day of March, 2016.

MAR 9 2016

LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS

_____
CIRCUIT JUDGE

SUBMITTED BY:

KARRES D. MANNING
DEPUTY PROSECUTING ATTORNEY

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS

STATE OF ARKANSAS                                                    PLAINTIFF

VS.                                  35CR-2014-436-1

SAMUEL EVANS                                                         DEFENDANT

## ORDER

On the 14th day of March, 2016, this matter came before the Court for Jury Trial, the defendant appearing in person and by and through his attorney, John Cone and Sara Dalyrmple, and the State appearing by and through its deputy prosecuting attorneys, Karres Manning and Carol Billingsly. A jury was empanelled and duly sworn. Upon hearing the testimony and the arguments of counsel, and after deliberating, the jury was unable to reach a verdict. That on March 14th, 2016, a mistrial was declared.

That the bond previously authorized shall remain in effect. That this matter shall be reset for trial. That the time for trial shall commence running from the date of the mistrial.

IT IS SO ORDERED this 28th day of April, 2016.

_____
CIRCUIT JUDGE

PREPARED BY:

_____
KARRES D. MANNING
Deputy Prosecuting Attorney

copies: P/A
     Sheriff
     Division I
     Public Defender, Attorney John Cone for Defendant

FILED

MAR 28 2016

LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS